**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Anthony James Merrick,

Plaintiff,

v.

Charles L. Ryan, et al.,

Defendants.

No. CV-15-00684-PHX-SPL (BSB)

**REPORT AND RECOMMENDATION**

On May 13, 2016, Plaintiff filed a motion to supplement the pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure. (Doc. 52.) On June 15, 2016, Defendants filed a response in opposition to that motion. (Doc. 63.) Plaintiff has not filed a reply and the time to do so has passed. *See* LRCiv 7.2(d). For the reasons below, the Court recommends that the motion to supplement the pleadings be denied.

## I. Background

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. On July 24, 2015, Plaintiff filed a Second Amended Complaint. (Doc. 14.) The Court screened the Second Amended Complaint, pursuant to 28 U.S.C. § 1915A(a), and found that Plaintiff stated Eighth Amendment medical-treatment claims against Corizon in Count One, Ryan in Count Two, and Dr. Barcklay in Count Five. (Doc. 18 at 8-9.) The Court dismissed the retaliation claim against Dr. Barcklay in Count Six.[1] (*Id.* at 8.) In Count Six, Plaintiff

[1] The Court also dismissed Counts Three, Four, Seven, and Eight for failure to state a claim, and dismissed Plaintiff's supervisory liability claim in Count One. (Doc. 18 at 7, 10.)

alleged that Dr. Barcklay falsified his medical records in retaliation for Plaintiff's failure to compliment her hair. (Doc. 14 at 16.) The Court found that Plaintiff did not adequately link the alleged falsification of medical records with the alleged confrontation between Plaintiff and Dr. Barcklay. The Court also found that Plaintiff failed to show that he suffered more than minimal harm or that Dr. Barcklay's actions chilled his exercise of his First Amendment rights. (Doc. 18 at 8.)

**II. Motion to Supplement the Pleadings**

On May 13, 2016, Plaintiff filed the pending motion to supplement pursuant to Rule 15(d) and a proposed supplemental pleading. (Docs. 52, 53.) Plaintiff asserts that his Second Amended Complaint alleges events that occurred prior to January 2016, but he intended to allege continuing violations. (*Id.* at 2.) He seeks to supplement the pleadings with transactions, occurrences, and events that happened after he filed his Second Amended Complaint. (*Id.*)

In his proposed supplemental pleading, Plaintiff adds factual allegations to Counts One, Two, Five, and Six. (Doc. 53.) Plaintiff alleges that on January 11, 2016, he submitted a Health Needs Request (HNR) complaining of a cluster headache. (*Id.* at 1.) On January 15, 2016, a nurse practitioner prescribed Plaintiff Excedrin for fifteen days and instructed him to notify medical if his headaches persisted so medical staff could order Imitrex. (*Id.* at 1-2.) Plaintiff also alleges that between January 28 and February 26, 2016, he submitted several HNRs complaining that Excedrin did not help and he was still suffering from headaches. (*Id.* at 2.) Between February 18 and March 25, 2016, Plaintiff allegedly submitted four complaints to medical for not being seen, evaluated, or treated for his headaches and spinal pain. (*Id.*) Medical staff responded to the HNRs and complaints by informing Plaintiff that he was scheduled to be seen by medical. (*Id.*)

On April 8, 2016, Plaintiff saw Dr. Barcklay for his headaches and spine pain. (*Id.*) She instructed Plaintiff to notify correctional staff immediately of any further spinal injuries and they would schedule an emergency appointment for Plaintiff to see Dr. Barcklay on the day of the injury. (*Id.*) Plaintiff alleges Dr. Barcklay ordered

"standard treatments" for the migraine headaches, including Imitrex. (Doc. 53 at 2.) Plaintiff states that he no longer had cluster headaches. (*Id.*) Dr. Barcklay also gave Plaintiff a non-steroidal anti-inflammatory drug (NSAID) for his spine. (*Id.*)

Plaintiff further alleges that on April 24, 2016, he suffered "at least one herniated disc in his lower back." (*Id.* at 3.) On April 25, 2016, he notified correctional staff and Nurse Millard treated him after she consulted a Nurse Practitioner, because Dr. Barcklay did not answer her phone. (*Id.*) Nurse Millard issued a Special Needs Order (SNO) for medical ice for seventy-two hours and a lay-in for thirty days and "requested an urgent provider visit." (*Id.*) Plaintiff alleges Dr. Barcklay rescinded the SNO on April 26, 2016 and told a correctional officer that she did not care about Plaintiff's pain. (*Id.*) Plaintiff alleges that he "then complained of an emergency and requested to be seen by medical," and a correctional officer told him that Dr. Barcklay stated he would be seen in a couple hours by "Dr. Suit." (*Id.*) Plaintiff asserts there is no Dr. Suit at the facility where he is housed, and he believes this was a reference to this lawsuit, and that Dr. Barcklay rescinded the SNO in retaliation for Plaintiff filing a lawsuit against her. (*Id.*)

Plaintiff alleges that, as of May 5, 2016, he had not been seen, evaluated, or treated for his herniated discs. (*Id.*) He contends his herniated discs have not healed, and he has been unable to complete activities of daily living and has been in great pain. (*Id.* at 4.)

**A. Rule 15(d) Standard to Supplement Pleadings**

Rule 15(d) provides that the court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). The court has broad discretion in deciding whether to permit a plaintiff to supplement a pleading. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). "The rule is a tool of judicial economy and convenience." *Id.* "While leave to permit supplemental pleading is favored . . . , it cannot be used to introduce 'a separate, distinct and new cause of action.'"

*Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101, 102 (D. Mo. 1939)) ; *but see Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (stating that "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed.").

When determining whether to allow supplementation under Rule 15(d), courts use the standard used to evaluate a motion to amend under Rule 15(a). *Torres v. Ryan*, 2013 WL 4026870, at *6 (D. Ariz. Aug. 7, 2013). Thus, a court should grant leave to supplement "unless there is undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the supplement would be futile." *Id.* (quotation omitted). Futility alone can justify denial of a motion to supplement. *Id.* (citing *Bonin v. Calderon*, 59 F.3d 815, 845-46 (9th Cir. 1995)).

**B. Plaintiff's Motion to Supplement Should be Denied**

Defendants argue that the motion to supplement should be denied because it would unduly prejudice Defendants by delaying resolution of this matter and would be futile. (Doc. 63.)

**1. Prejudice and Delay**

As Defendants note, the deadline for amending pleadings was February 29, 2016. (Doc. 31 at 1.) The deadline for serving discovery requests was May 28, 2016. (Docs. 31, 48.) Because discovery is now closed, Defendants would be unable to investigate Plaintiff's new allegations. Additionally, this case has been pending since 2015 and extending the discovery deadlines at this late date would delay resolution of this matter. Accordingly, delay and prejudice to Defendants weigh against permitting Plaintiff to supplement the Second Amended Complaint.

**2. Futility**

Defendants also argue that the motion to supplement should be denied as futile because Plaintiff's supplemental allegations fail to state a claim. (Doc. 63 at 7.)

**a. Defendant Ryan**

The proposed supplemental pleading does not make any specific allegations against Defendant Ryan. (*See* Doc. 53.) Therefore, none of the proposed allegations state a claim against Defendant Ryan. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that allegations of personal participation are required to state a § 1983 claim).

**b. Defendant Corizon**

The supplemental pleading alleges that in January, February, and on April 1, 2016, Plaintiff submitted HNRs to Corizon complaining of pain in his spine and requesting treatment.[2] (Doc. 53 at 1.) Plaintiff also alleges that on January 11, 2016, he submitted an HNR to Corizon complaining of a cluster headache and requesting treatment. (*Id.*) Plaintiff states that he saw a nurse practitioner on January 15, 2016 and was given Excedrin for his headaches. (*Id.* at 2-3.) Plaintiff asserts that between February 18, 2016 and March 25, 2016, he submitted four complaints to Corizon about not being seen or treated for his headaches or spine pain. (*Id.* at 2.) Plaintiff alleges that "medical staff" responded to the HNRs and complaints and stated that Plaintiff was scheduled to be seen. (*Id.*) Plaintiff saw Dr. Barcklay for his headaches and spine pain on April 8, 2016. (*Id.*) Defendant Barcklay gave Plaintiff "standard treatment" for his headaches and a NSAID for his spine. (*Id.*)

Plaintiff's allegations against Corizon could be construed as asserting a claim of deliberate indifference based on the delay in seeing Dr. Barcklay about his headaches and spine pain. To the extent Plaintiff alleges Corizon is responsible for any acts or omissions of the medical staff, these are allegations of respondeat superior liability that fail to state a claim under § 1983. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) (stating that to bring a § 1983 claim against a municipality or private entity

---

[2] Defendants assert that the supplemental pleading does not include any allegations against Corizon. (Doc. 63 at 7.) Upon review of the supplemental pleading, the Court finds that it makes several allegations that pertain to Defendant Corizon. (Doc. 53.)

performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains).

Additionally, Plaintiff does not allege how the alleged delay in treatment caused him any harm, let alone the "substantial harm" required to state a claim of deliberate indifference based on a delay in receiving medical care. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (stating that for delay in treatment to constitute an Eighth Amendment violation, "the delay must have caused substantial harm."). Therefore, Plaintiff does not state a claim against Defendant Corizon.

**c. Defendant Barcklay**

Plaintiff's supplemental pleading also fails to state a claim against Dr. Barcklay. In his proposed supplemental pleading, Plaintiff alleges that he complained of cluster headaches on January 11, 2016 and saw a nurse practitioner and was given Excedrin on January 15, 2016. (Doc. 53 at 1-2.) He alleges that in February and March 2016 he wrote medical several HNRS and complaints stating that the Excedrin was not working. (*Id.* at 2.) On April 8, 2016, he saw Dr. Barcklay for headaches and spine pain. (*Id.* at 2.)

To the extent Plaintiff alleges deliberate indifference due to the delay in seeing Dr. Barcklay, he fails to state a claim. There is no indication that Dr. Barcklay knew about or had anything to do with any delay, and thus she had no personal participation or subjective knowledge of a risk of harm. *See Iqbal*, 556 U.S. at 676. Plaintiff also fails to allege how the alleged delay caused him any harm, and therefore does not allege the "substantial harm" required to state a claim for deliberate indifference based upon a delay in receiving medical treatment. *See Wood*, 900 F.2d at 1335.

Plaintiff further alleges that at an April 8, 2016 appointment, Dr. Barcklay instructed him to immediately notify correctional staff of any further spinal injuries and they would schedule an emergency appointment with her that same day. (Doc. 53 at 2.) He alleges Dr. Barcklay "ordered standard treatments for the migraine headaches" and gave him a NSAID for his spine and Imitrex for migraines. (*Id.*) These allegations do not state a claim that Dr. Barcklay was deliberately indifferent to Plaintiff's serious

medical needs. Rather, these allegations indicate that on April 8, 2016, Dr. Barcklay provided medical treatment for Plaintiff's headaches and spinal pain, and instructed him to notify correctional officers of any further spinal injuries so she could see and treat him immediately. These allegations fail to state a claim because they allege that Dr. Barcklay addressed Plaintiff's medical issues. *See Toguchi v. Soon Hwang Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Plaintiff also alleges he suffered a herniated disc on April 24, 2016, and notified correctional staff of that injury the next day. (Doc. 53 at 3.) Plaintiff alleges he was "seen, evaluated and treated" by Nurse Millard after she consulted with a nurse practitioner because Dr. Barcklay did not answer her phone. (*Id.*) To the extent Plaintiff alleges Dr. Barcklay was deliberately indifferent for failing to answer her phone, he fails to state a claim. Deliberate indifference requires subjective knowledge of a risk of harm and disregard of that risk. *See Toguchi*, 391 F.3d at 1057. If Dr. Barcklay did not answer her phone, she could not have been aware of any risk of harm to Plaintiff and, therefore, could not have ignored the risk. Accordingly, these allegations do not state an Eighth Amendment claim of deliberate indifference. Moreover, Plaintiff admits he was "seen, evaluated and treated," and therefore, does not allege that he suffered any harm from this incident.

Plaintiff further alleges Nurse Millard issued an SNO for medical ice and a thirty-day lay-in, but Dr. Barcklay rescinded the SNO. (Doc. 53 at 3.) Plaintiff alleges he complained of an emergency and requested to be seen by medical, and a correctional officer stated that Dr. Barcklay said that he would be seen in a few hours by Dr. Suit. Plaintiff alleges there is no Dr. Suit, and he believes this was a reference to this lawsuit, and that Dr. Barcklay rescinded the SNO as retaliation for him filing complaints and this lawsuit against her. (*Id.*)

To the extent Plaintiff alleges Dr. Barcklay was deliberately indifferent for rescinding the SNO, he fails to state a claim. Defendant Barcklay may have rescinded the SNO based on her different medical opinion about the course of treatment. "A

difference of opinion between a physician and the prisoner — or between medical professionals — concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc); *see also Ramirez v. Bartos*, 2007 WL 2725246, at *4-5 (D. Ariz. Sept. 17, 2007) (finding that a nurse's modification of an SNO was "nothing more than a difference of medical opinion").

Rather, "[t]o show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). The supplemental pleading alleges that Defendant Barcklay did not "care about [Plaintiff's] pain," but does not allege that she acted with conscious disregard of an excessive risk to Plaintiff's health. (Doc. 53 at 3.) Therefore, Plaintiff fails to state a claim of deliberate indifference based on Defendant Barcklay rescinding the SNO.

Plaintiff also asserts a retaliation claim based on his allegations that Dr. Barcklay rescinded the SNO. (Doc. 53 at 3.) He argues the she rescinded the SNO in retaliation for Plaintiff filing complaints and a lawsuit against her. (*Id.*) Defendants argue that the Court should not permit Plaintiff to allege a new cause of action in the supplemental pleading. (Doc. 63 at 9.) The Court previously dismissed Plaintiff's proposed retaliation claim that was based on different facts. (*See* Doc. 18 at 8.) Thus, the proposed claim of retaliation under the First Amendment is a new cause of action. However, the Ninth Circuit has held that supplemental pleading "cannot be used to introduce a separate, distinct and new cause of action." *Planned Parenthood*, 130 F.3d at 402; *see also Calloway v. Adams*, 624 F. App'x 605, 606 (9th Cir. 2015) (holding that the district court did not abuse its discretion in dismissing Plaintiff's claims to the extent he sought to add new parties and new claims arising out of events "unrelated to the claims upon which he

was granted leave to proceed") (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)).

The Court screened the Second Amended Complaint and only permitted Plaintiff to proceed on his Eighth Amendment deliberate indifference claims. Therefore, Plaintiff should not be permitted to supplement the Second Amended Complaint to add a First Amendment retaliation claim, which would be a "separate, distinct and new cause of action." *See id.* Additionally, Plaintiff's retaliation claim is speculative because it is based on his belief that Dr. Barcklay was referring to this lawsuit when a correctional officer told Petitioner that Dr. Barcklay stated Plaintiff would be seen by Dr. Suit. (Doc. 53 at 3.) These allegations fail to state a claim because they do not rise above the speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "the factual allegations in the complaint must be sufficient to raise a right to relief above a speculative level").

Plaintiff also fails to allege that Dr. Barcklay's actions chilled his exercise of his First Amendment rights. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (holding that a plaintiff alleging retaliation must allege, inter alia, a causal connection between the adverse action and the protected conduct and that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities"). Plaintiff's allegations indicate that Dr. Barcklay saw him on April 8, 2016 — after he filed his lawsuit against her — and ordered "standard treatments" for his headaches and spinal pain. (Doc. 53 at 2.) Thus, there is no evidence that Dr. Barcklay retaliated against Plaintiff at that time. Plaintiff has not shown a causal connection between the filing of this action against Dr. Barcklay and her rescinding an SNO on April 26, 2016, just weeks after she provided care for Plaintiff. Considering that Dr. Barcklay provided medical care for Plaintiff after he filed this lawsuit, there does not appear to be a plausible connection between the lawsuit and Dr. Barcklay rescinding the SNO.

/ / /

#### d. Allegations about Herniated Disc

The supplemental pleading further alleges that as of May 5, 2016, Plaintiff had not been evaluated or treated for his herniated disc. (Doc. 53 at 3.) Plaintiff alleges that on February 9 and April 29, 2016, he received passes for medical appointments, but they were cancelled by medical. (*Id.*) Plaintiff claims that his herniated disc has not been treated and he has been "unable to do daily life activities and been in great pain." (*Id.* at 3-4.) These allegations are not directed against a particular defendant and, therefore, fail to state a claim. *See Iqbal*, 556 U.S. at 676; *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (stating that "for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation; there is no respondeat superior liablity.").

Plaintiff generally asserts that he "wrote" Defendants' attorneys, Defendant Corizon, and Defendant Ryan about "these matters." (Doc. 53 at 4.) However, Plaintiff does not state when he allegedly wrote to the attorneys or parties, or identify the particular matters he allegedly wrote about. (*Id.*) These conclusory allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678-80.

## III. Conclusion

The Court recommends that the motion to supplement be denied because permitting Plaintiff to supplement his pleadings at this point in the proceeding would delay resolution of this matter and prejudice Defendants because the discovery deadlines have passed. Additionally, the Court recommends that the motion to supplement be denied because Plaintiff's supplemental allegations fail to state a claim.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion to Supplement the Pleadings (Doc. 52) be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rule of Appellate Procedure should not be filed until entry of the District Court's

judgment. The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 8th day of July, 2016.

Bridget S. Bade
United States Magistrate Judge